Dennis J. Artese (DA-1427)
Rene F. Hertzog (RH-9227)
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733
dartese@andersonkill.com
rhertzog@andersonkill.com

*Attorneys for Plaintiff*
*Board of Managers of West Perry Condominium*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BOARD OF MANAGERS OF WEST PERRY
CONDOMINIUM,

                      Plaintiff,

        -against-

ADMIRAL INDEMNITY COMPANY,

                      Defendant.

Civ. Action No. 14 CV 3471 (SHS)
(HBP)

---

## PLAINTIFF'S RULE 56.1 RESPONSE TO DEFENDANT'S STATEMENT OF
## UNDISPUTED FACTS AND PLAINTIFF'S COUNTER-STATEMENT OF FACTS

Pursuant to Local Civil Rule 56.1, Plaintiff Board of Managers of West Perry

Condominium ("Plaintiff") hereby responds to the Rule 56.1 Statement of Facts submitted by

Defendant Admiral Indemnity Company ("Admiral") in support of Admiral's motion for partial

summary judgment, and submits its counter-statement of facts.

### RESPONSE TO DEFENDANT'S UNDISPUTED FACTS

#### Procedural History

**SOF 1.** Plaintiff BOARD OF MANAGERS OF WEST PERRY CONDOMINIUM
(hereinafter "WEST PERRY") commenced this action by filing a Complaint in the United States
District Court, Southern District of New York, on or about May 13, 2014, seeking a declaratory
judgment and damages from breach of contract against ADMIRAL under the commercial

property coverage part of a commercial lines package policy issued by ADMIRAL, in connection with a claim of property damage as a result of flooding from the storm known as "Superstorm Sandy" (hereinafter, "Sandy"), which occurred on or about October 29, 2012. **(See Exhibit "2" attached to the Affidavit of Jonathan S. Chernow, Esq. (hereinafter "Chernow Aff.").)**

**RESPONSE TO SOF 1:** Undisputed.

**SOF 2.** On or about June 19, 2014, defendant ADMIRAL filed an Answer and Affirmative Defenses generally denying the allegations in the Complaint and asserting various affirmative defenses. **(See Chernow Aff. ¶ 6, Exhibit "3.")**

**RESPONSE TO SOF 2:** Undisputed.

**SOF 3.** ADMIRAL's Third Affirmative Defense alleges, among other things, that the terms and conditions of the Admiral Policy make it excess over the maximum limit that can be insured under the National Flood Insurance Program Policy ("NFIP Policy") issued for the property located at 173 Perry Street ("173 Perry") — whether or not the maximum limit is obtained or maintained and whether or not the Insured can "collect" under the policy — and that there is no coverage under the policy for the Plaintiff's claims. **(See Chernow Aff. ¶ 6, Exhibit "3," supra, at 13-14.)**

**RESPONSE TO SOF 3:** Admiral's Third Affirmative Defense speaks for itself.

**SOF 4.** ADMIRAL's Fourth Affirmative Defense alleges, among other things, that the claims asserted in the Complaint are barred in whole or in part by the Other Insurance provisions contained in the Admiral Policy, including but not limited to provisions implicating the Insured's concurrent NFIP Policy of insurance issued by Harleysville Worcester Insurance Company (hereinafter "Harleysville"), Policy No. 87026188752012, inasmuch as the Insured was required to provide an underlying NF1P Policy for 173 Perry, which policy has limits in the amounts of $3,250,000.00, and the Admiral Policy is excess over such NFIP Policy with respect to flood coverage and would not be triggered until the limits of the NFIP Policy have been exhausted. **(See Chernow Aff. ¶ 6, Exhibit "3," supra, at 15-16.)**

**RESPONSE TO SOF 4:** Admiral's Fourth Affirmative Defense speaks for

itself.

## Policies of Insurance

**SOF 5.** On or about December 2, 2011, ADMIRAL issued a commercial lines package policy of insurance denoted as Policy No. 21-2-3420-31-12 to named insured West Perry Condominium c/o Brown Harris Stevens Residential Mgmt. (hereinafter, the "Insured"1), with a mailing address at 770 Lexington Avenue in New York, New York, for the policy period of December 2, 2011 through December 2, 2012 (hereinafter "the Admiral Policy"). **(See Affidavit**

2

of Jay Vigneaux (hereinafter "Vigneaux Aff.") ¶ 4, Exhibit "A," all annexed as Exhibit "1" to the Chernow Aff.)

        **RESPONSE TO SOF 5:**  Undisputed.

      **SOF 6.**  The Admiral Policy was a renewal of a prior policy issued by ADMIRAL, Policy No. 21-2-3420-31-12.  **(See Vigneaux Aff. ¶ 5.)**

        **RESPONSE TO SOF 6:**  Disputed on the basis that Admiral's citation does not support its "fact." Local Rule 56.1 requires that "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b) … must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c). Fed. R. Civ. P. 56(c)(4) requires that any affidavit used to support a motion "must be made on personal knowledge…." Nowhere in Mr. Vigneaux's affidavit does he claim to have personal knowledge regarding the renewal of the Admiral Policy. Indeed, Mr. Vigneaux cannot have personal knowledge of such matters. Mr. Vigneaux is presently the Property General Adjuster for Clermont Specialty Managers ("Clermont"). (Vigneaux Aff., ¶1.). Mr. Vigneaux attests that at the time of West Perry's loss, he was the Property Claims Supervisor for Clermont. (Id.). Nowhere in his affidavit does Mr. Vigneaux state that he ever worked for Admiral. Further, Mr. Vigneaux's limited role has been in that of a third-party claims handler. He does not claim to have ever worked as an underwriter or to have been involved in the underwriting of the Admiral Policy. Accordingly, Mr. Vigneaux has no personal knowledge of the "fact" alleged in SOF 6, which is therefore inadmissible and should be stricken and disregarded by this Court.

      **SOF 7.**  The Admiral Policy insures 173 Perry against risk of flood, among other things, but is subject to certain terms, conditions, limitations, endorsements, and exclusions. **(See Vigneaux Aff. ¶ 6.)**

        **RESPONSE TO SOF 7:**  Undisputed.

3

**SOF 8.**   The Admiral Policy is subject to the Flood Coverage Endorsement, CP 10 65 10 00, which provides in pertinent part as follows:

> H. Deductible
>
> 1.   The Deductible for coverage provided under this endorsement is the Deductible applicable to Flood as shown in the Flood Coverage Schedule or in the Declarations.
>
> 2.   We will not pay that part of the loss that is attributable to any Deductible(s) in the National Flood Insurance Program policy.
>
> 3.   If Flood results in another Covered Cause of Loss and if both Covered Causes of Loss cause loss or damage, then only the higher deductible applies (e.g., the Flood deductible or the Fire deductible).
>
> \*\*\*
>
> I. Other Insurance
>
> The Other Insurance Commercial Property Condition is replaced by the following with respect to the coverage provided under this endorsement:
>
> 1.   If the loss is also covered under a National Flood Insurance Program (NFIP) policy, or if the property is eligible to be written under an NFIP policy but there is no such policy in effect, then we will pay only for the amount of loss in excess of the maximum limit that can be insured under that policy. This provision applies whether or not the maximum NFIP limit was obtained or maintained, and whether or not you can collect on the NFIP policy. We will not, under any circumstances, pay more than the applicable Limit of Insurance for Flood as stated in the Flood Coverage Schedule or the Declarations of this Coverage Part..
>
> However, this Provision I.1. does not apply under the following circumstances:
>
> \*\*\*
>
> b.   An NFIP policy is not in effect because we have agreed to write this Flood Coverage Endorsement without underlying NFIP coverage. There is such an agreement only if the Flood Coverage Schedule or the Declarations indicate that the Underlying Insurance Waiver applies.

(Emphases added).  (See Vigneaux Aff. ¶ 7, Exhibit "A," supra, at Form CP 10 65 10 00, at Page 4 of 4.) This provision expressly replaces the "other insurance" provision contained in the Commercial Property Conditions, CP 00 90 07 88, which provided in relevant part:

> G. OTHER INSURANCE
>
> 1.   You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we

4

will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits Of Insurance of all insurance covering on the same basis.

2.      If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

(Emphasis added). (See Vigneaux Aff. ¶ 7, Exhibit "A," supra, at Form CP 00 90 07 08, at Page 1 of 2.).

**RESPONSE TO SOF 8:** Not disputed that the Admiral Policy contains the terms and provisions cited above. The Admiral Policy speaks for itself.

**SOF 9.** The Admiral Policy is also subject to Cooperative and Condominium Enhanced Coverage Endorsement Property, SP 183 07 08, which provides in pertinent part as follows:

A.5 ADDITIONAL COVERED CAUSE OF LOSS FLOOD

\*\*\*

(5) Deductible

(a)      The Deductible for coverage provided under this endorsement is the Deductible applicable to Flood as shown in the Multiple Deductible Form—Enhanced Coverage Endorsement.

(b)      We will not pay that part of the loss that is attributable to any Deductible(s) in the National Flood Program policy.

(c)      If Flood results in another Covered Cause of Loss, and if both Covered Causes of Loss cause loss or damage, then only the higher deductible applies (e.g., the Flood deductible or the Fire deductible).

(6) Other Insurance

The Other Insurance Commercial Property Condition is replaced by the following with respect to the coverage provided under this endorsement:

(a)      If the loss is also covered under a National Flood Insurance Program (NF1P) policy, or if the property is eligible to be written under an NFIP policy but there is no such policy in effect, then we will pay only for the amount of loss in excess of the maximum limit that can be insured under that policy. This provision applies whether or not the maximum NFIP limit was obtained or maintained, and whether or not you can collect on

5

> the NFIP policy. We will not, under any circumstances, pay more than the
> applicable Limit of Insurance for Flood as stated in this form.

(Emphases added). (See Vigneaux Aff. ¶ 8, Exhibit "A," supra, at Form SP 183 07 08, at Page 10

of 37.)

**RESPONSE TO SOF 9:**   Not disputed that the Admiral Policy contains the

terms and provisions cited above.  The Admiral Policy speaks for itself.

**SOF 10.**   The deductible provision in the Condominium Association Coverage Form, CP
00 17 10 00, provides as follows:

> D.   Deductible
>
> \* \* \*
>
> When the occurrence involves loss to more than one item of
> Covered Property and separate Limits of Insurance apply, the
> losses will not be combined in determining the application of the
> Deductible....

(Emphasis added). (See Vigneaux Aff. ¶ 9, Exhibit "A," supra, at Form 00 17 10 00, at Page 7 of

12.)

**RESPONSE TO SOF 10:**   Not disputed that the above constitutes an accurate,

partial transcription of the Deductible provision of the Admiral Policy, the terms of which speak

for themselves.

**SOF 11.**   The building located at 173 Perry is situated in a flood plain, and ADMIRAL
required that the Insured procure a separate NFIP policy for such property. (See Vigneaux Aff. ¶
10.)

**RESPONSE TO SOF 11:**   Disputed on the basis that Admiral's citation does not

support its "fact."  Local Rule 56.1 requires that "[e]ach statement by the movant or opponent

pursuant to Rule 56.1(a) and (b) ... must be followed by citation to evidence which would be

admissible, set forth as required by Fed. R. Civ. P. 56(c).  Fed. R. Civ. P. 56(c)(4) requires that

any affidavit used to support a motion "must be made on personal knowledge...."  Nowhere in

Mr. Vigneaux's affidavit does he claim to have personal knowledge regarding the flood plain

6

applicable to 173 Perry or the underwriting of the Admiral Policy. Indeed, Mr. Vigneaux cannot

have personal knowledge of such matters. Mr. Vigneaux is presently the Property General

Adjuster for Clermont. (Vigneaux Aff., ¶1.). Mr. Vigneaux attests that at the time of West

Perry's loss, he was the Property Claims Supervisor for Clermont. (Id.). Nowhere in his

affidavit does Mr. Vigneaux state that he ever worked for Admiral. Further, Mr. Vigneaux's

limited role has been in that of a third-party claims handler. He does not claim to have ever

worked as an underwriter or to have been involved in the underwriting of the Admiral Policy.

Accordingly, Mr. Vigneaux has no personal knowledge of the "facts" alleged in SOF 11, which

are therefore inadmissible and should be stricken and disregarded by this Court.

**SOF 12.** In this regard, Harleysville issued the NFIP Policy, policy number 87026188752012, to "West Perry Condo" for the period from May 16, 2012, to May 16, 2013, with limits in the amount of $3,250,000.00, insuring the 173 Perry property for flood damage. Plaintiff has represented that a true and correct copy of the NFIP Policy issued by Harleysville can be found attached as Exhibit "B" to its Complaint. (See Vigneaux Aff. ¶ 11; Compl., Exhibit "B.")

**RESPONSE TO SOF 12:** Undisputed that Harleysville issued the NFIP Policy

to West Perry. To the extent Admiral's "fact" implies that the NFIP Policy was issued because

Admiral required it, that "fact" is denied on the basis that Admiral's citation does not support its

"fact." See Response to Paragraph 11, *supra*.

**SOF 13.** The Insured obtained the maximum $3,250,000.00 NFIP Policy limit for 173 Perry, and Admiral knew the Insured had purchased the NFIP Policy at the time of renewal of the Admiral Policy. (See Vigneaux Aff. ¶¶ 12-13, Exhibit "B.")

**RESPONSE TO SOF 13:** Not disputed that West Perry obtained the NFIP

Policy, but disputed that Admiral knew of this at the time of the renewal of the Admiral Policy,

on the basis that Admiral's citation does not support its "fact."

Local Rule 56.1 requires that "[e]ach statement by the movant or opponent

pursuant to Rule 56.1(a) and (b) ... must be followed by citation to evidence which would be

7

admissible, set forth as required by Fed. R. Civ. P. 56(c). Fed. R. Civ. P. 56(c)(4) requires that

any affidavit used to support a motion "must be made on personal knowledge...." Nowhere in

Mr. Vigneaux's affidavit does he claim to have personal knowledge regarding the underwriting

or renewal of the Admiral Policy. Indeed, Mr. Vigneaux cannot have personal knowledge of

such matters. Mr. Vigneaux is presently the Property General Adjuster for Clermont. (Vigneaux

Aff., ¶1.). Mr. Vigneaux attests that at the time of West Perry's loss, he was the Property Claims

Supervisor for Clermont. (Id.). Nowhere in his affidavit does Mr. Vigneaux state that he ever

worked for Admiral. Further, Mr. Vigneaux's limited role has been in that of a third-party

claims handler. He does not claim to have ever worked as an underwriter or to have been

involved in the underwriting of the Admiral Policy. Accordingly, Mr. Vigneaux has no personal

knowledge of the "fact" alleged in SOF 13, which is therefore inadmissible and should be

stricken and disregarded by this Court.

        The email (Exhibit B), to which Mr. Vigneaux makes reference, does not purport

to be sent by, received by, or copied to him. Thus, Mr. Vigneaux cannot authenticate or provide

proper foundation for the exhibit. Additionally, the email does not support Admiral's "fact,"

because it makes reference to an NFIP policy that 173 Perry had "last year," presumably

referring to October 2011, the year before the policy period at issue here.

**SOF 14.**  The parties agreed that the NFIP Policy would be the primary flood policy for
the 173 Perry property, and that Admiral would only cover amounts in excess of that primary
policy's limit with respect to flood coverage, with the Admiral Policy being negotiated with
terms that were agreed to and premium calculated on that basis. (See Vigneaux Aff. ¶ 14.)

        **RESPONSE TO SOF 14:**  Disputed on the basis that Admiral's citation does not

support its "fact." Local Rule 56.1 requires that "[e]ach statement by the movant or opponent

pursuant to Rule 56.1(a) and (b) ... must be followed by citation to evidence which would be

admissible, set forth as required by Fed. R. Civ. P. 56(c). Fed. R. Civ. P. 56(c)(4) requires that

any affidavit used to support a motion "must be made on personal knowledge...." Nowhere in

Mr. Vigneaux's affidavit does he claim to have personal knowledge regarding the underwriting

of the Admiral Policy. Indeed, Mr. Vigneaux cannot have personal knowledge of such matters.

Mr. Vigneaux is presently the Property General Adjuster for Clermont. (Vigneaux Aff., ¶1.).

Mr. Vigneaux attests that at the time of West Perry's loss, he was the Property Claims Supervisor

for Clermont. (Id.). Nowhere in his affidavit does Mr. Vigneaux state that he ever worked for

Admiral. Further, Mr. Vigneaux's limited role has been in that of a third-party claims handler.

He does not claim to have ever worked as an underwriter or to have been involved in the

underwriting of the Admiral Policy. Accordingly, Mr. Vigneaux has no personal knowledge of

the "facts" alleged in SOF 14, which are therefore inadmissible and should be stricken and

disregarded by this Court.

Also disputed on the basis that the plain language of the Other Insurance

provision in the Admiral Policy states that it provides excess coverage only "[i]f the loss is also

covered under a National Flood Insurance Program (NFIP) policy." (**See Vigneaux Aff., Ex. A.**)

**SOF 15.** The Insured's own broker has admitted that the NFIP Policy was to be the
primary flood coverage afforded to 173 Perry. In a November 28, 2012 email from Alex Seaman
of Hub International (hereinafter "Hub"), the Insured's broker, to Jeanette Napodano of Hub and
Jodi Strum of Clermont Specialty Managers (hereinafter "Clermont"), the authorized claims
handler for ADMIRAL, Mr. Seaman clearly distinguishes between the Excess Flood and Primary
Flood policies:

> Jeanette — Please contact Jodi — process renewal as quoted
> including the Excess Flood ($2,500,000) — installments — direct
> billing.
>
> Managing agent just confirmed that they will overnight all forms
> and check to us on the Primary Flood.

**(See Vigneaux Aff. ¶ 15, Exhibit "C.")**

**RESPONSE TO SOF 15:** Disputed on the basis that Admiral's citation does not

support its "fact." Local Rule 56.1 requires that "[e]ach statement by the movant or opponent

9

pursuant to Rule 56.1(a) and (b) … must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c). Fed. R. Civ. P. 56(c)(4) requires that any affidavit used to support a motion "must be made on personal knowledge…." Nowhere in Mr. Vigneaux's affidavit does he claim to have personal knowledge of the contents or subject matter of the subject email, which does not purport to be sent by, received by, or copied to him. Mr. Vigneaux, therefore, cannot authenticate or provide proper foundation for the exhibit.

Indeed, Mr. Vigneaux cannot have personal knowledge of the email or its contents. Mr. Vigneaux is presently the Property General Adjuster for Clermont. (Vigneaux Aff., ¶1.). Mr. Vigneaux attests that at the time of West Perry's loss, he was the Property Claims Supervisor for Clermont. (Id.). Nowhere in his affidavit does Mr. Vigneaux state that he ever worked for Admiral. Further, Mr. Vigneaux's limited role has been in that of a third-party claims handler. He does not claim to have ever worked as an underwriter or to have been involved in the underwriting of the Admiral Policy. Accordingly, Mr. Vigneaux has no personal knowledge of the "facts" alleged in SOF 15, which are therefore inadmissible and should be stricken and disregarded by this Court.

Moreover, the email (Exhibit C), to which Mr. Vigneaux makes reference, does not support Admiral's "fact," because it is sent just prior to the expiration of the Admiral Policy at issue in this case and has a subject line that reads "renewal," indicating that the referenced policy is not the Admiral Policy at issue in this case.

## Insured's Claims to ADMIRAL and Harleysville

**SOF 16.** On or about October 30, 2012, ADMIRAL received notice of a claim for loss from the Insured under the Admiral Policy, indicating that 173 Perry suffered damage from floodwaters and overflow during "Sandy." (See Vigneaux Aff. ¶ 16.)

**RESPONSE TO SOF 16:** Undisputed.

10

**SOF 17.**   Plaintiff alleges that it submitted a claim for flood loss to 173 Perry to Harleysville under the NFIP Policy. (Compl. ¶ 21.)

> **RESPONSE TO SOF 17:**   Undisputed.

**SOF 18.**   In or about the spring of 2013, the Insured's public adjuster, Philip J. Davidson of Philip J. Davidson Adjusters, Inc. (hereinafter "Davidson"), alleged to ADMIRAL that Harleysville agreed to pay only a portion of 173 Perry's flood loss under the NFIP Policy, contending that the remainder of the 173 Perry flood loss was not covered under the NFIP Policy. (See Vigneaux Aff. ¶ 18.)

> **RESPONSE TO SOF 18:**   Undisputed.

**SOF 19.**   No explanation or documentation was provided to ADMIRAL by the Insured's public adjuster as to why the remainder of 173 Perry's flood loss was not covered under the NFIP Policy. (See Vigneaux Aff. ¶ 19.)

> **RESPONSE TO SOF 19:**   Disputed.  See Vigneaux Aff., Ex. E (email from

West Perry's public adjuster to representatives of Admiral attaching two documents (omitted

from Ex. E) showing items of loss covered under Admiral Policy but not covered under NFIP

Policy).  Also disputed as immaterial.

**SOF 20.**   The Insured contended that the Admiral Policy should respond to that portion of the 173 Perry flood loss that was not covered under the NFIP Policy.  **(See Vigneaux Aff. ¶ 20.)**

> **RESPONSE TO SOF 20:**   Undisputed.

## Admiral's Coverage Position

**SOF 21.**   On June 26, 2013, Jay Vigneaux (hereinafter "Vigneaux"), Property Claims Supervisor of Clermont, sent a letter on behalf of ADMIRAL to Davidson, reserving ADMIRAL's rights. The letter stated, among other things, that the Admiral Policy was excess over the NFIP Policy issued by Harleysville, and would not be triggered until the limits of the NFIP Policy ($3,250,000.00) have been exhausted, due to the Admiral Policy's Deductible and Other Insurance provisions. The letter further stated that any applicable deductible under the Admiral Policy would be the amount of the underlying NFIP Policy limit, i.e., $3,250,000.00.  **(See Vigneaux Aff. ¶ 21, Exhibit "D.")**

> **RESPONSE TO SOF 21:**   Undisputed that the referenced letter was sent to Mr.

Davidson.  The document speaks for itself.

11

**SOF 22.**   On July 16, 2013, Vigneaux received a follow-up email from Davidson setting forth what he believed was covered under the Admiral Policy and the NFIP Policy. **(See Vigneaux Aff. ¶ 22, Exhibit "E.")**

    **RESPONSE TO SOF 22:**   Undisputed.

**SOF 23.**   In response, on July 23, 2013, Vigneaux sent an email to Davidson reiterating ADMIRAL's position that the Admiral Policy is excess of the limit of the NFIP Policy, and would not attach until the loss exceeds the applicable NFIP limit. **(See Vigneaux Aff. ¶ 23, Exhibit "F".)**

    **RESPONSE TO SOF 23:**   Undisputed.

**SOF 24.**   By email dated October 7, 2013, Davidson stated that the NFIP had only agreed to pay for a portion of its approximately $3,100,000.00 flood claim, and that $2,495,203.00 of the flood claim related to property "not covered nor eligible to be covered by the NFIP policy," and as such, the Admiral Policy was primary for that portion of the claim. **(See Vigneaux Aff. ¶ 24, Exhibit "G.")**

    **RESPONSE TO SOF 24:**   Undisputed.

**SOF 25.**   On or about February 25, 2014, Richard H. Starkie, Senior Vice President of Clermont, received a letter from the Insured's counsel, Dennis J. Artese of Anderson Kill P.C., stating, among other things, that ADMIRAL' s position was unfounded and asking ADMIRAL to reconsider its position. **(See Vigneaux Aff. ¶ 25, Exhibit "H.")**

    **RESPONSE TO SOF 25:**   Undisputed.

**SOF 26.**   On or about March 13, 2014, Benjamin A. Fleischner of White Fleischner & Fino LLP sent a letter in a response to Mr. Artese's letter of February 25, 2014, reiterating ADMIRAL's position on coverage and stating, among other things, that WEST PERRY's reading of the Flood Coverage Schedule and Endorsement in the Admiral Policy was flawed, and that ADMIRAL maintains that the flood coverage in the Admiral Policy is excess of the NFIP Policy sold by Harleysville covering the property located at 173 Perry. **(See Vigneaux Aff. ¶ 26, Exhibit "I.")**

    **RESPONSE TO SOF 26:**   Undisputed.

## PLAINTIFF'S COUNTER-STATEMENT OF FACTS

1.     Admiral Indemnity Company sold to West Perry Condominium Commercial Lines Package Policy, Policy No. 21-2-3420-31-12, with a policy period of December 2, 2011 through December 2, 2012 (the "Admiral Policy").  Vigneaux Aff., Ex. A.; Chernow Aff., Ex. 2 at ¶6 and Ex. 3 at ¶6.

2.     The Admiral Policy includes a commercial property coverage part, which is specifically endorsed to insure West Perry against risk of, among other things, flood, subject to certain conditions and exclusions in the Admiral Policy.  Vigneaux Aff., Ex. A at 35, 75 and 77 of 265; Chernow Aff., Ex. 2 at ¶6 and Ex. 3 at ¶6.

3.     "West Perry Condominium c/o Brown Harris Stevens Residential Mgmt." is the named insured under the Admiral Policy.  Vigneaux Aff., Ex. A at 17 of 265; Chernow Aff., Ex. 2 at ¶7 and Ex. 3 at ¶¶6-7.

4.     The Admiral Policy insured West Perry for two premises: (1) 173 Perry Street, New York, NY 10014-2363 ("173 Perry") and (2) 176 Perry Street, New York, NY 10014-2384 ("176 Perry").  Vigneaux Aff., Ex. A at 35 of 265; Chernow Aff., Ex. 2 at ¶8 and Ex. 3 at ¶8.

5.     Under the Admiral Policy, Admiral is required "to pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  Vigneaux Aff., Ex. A at 41 of 265.

6.     The Admiral Policy specifically adds risk of flood as an Additional Covered Cause of Loss pursuant to the Flood Coverage Endorsement.  Vigneaux Aff., Ex. A at 77 of 265.

nydocs1-1037298.2

7.      The Admiral Policy provides for a $5,000,000 Blanket Limit of Flood coverage shared between 173 Perry and 176 Perry, subject to a $50,000 deductible.  Vigneaux Aff., Ex. A at 75, 81, 97 (at A.5(3)(b)) of 265.

8.      West Perry purchased a National Flood Insurance Program policy from Harleysville Worcester Insurance Company ("Harleysville"), Policy No. 87026188752012, with a policy period of May 16, 2012 through May 16, 2013 (the "NFIP Policy").  Declaration of Robert J. Apfel, dated September 12, 2014 ("Apfel Decl."), Ex.A at NFIP 0001; Chernow Aff., Ex. 2 at ¶18 and Ex. 3 at ¶18.

9.      The NFIP Policy insured 173 Perry for flood damage up to $3,250,000.00. Apfel Decl., Ex. A at NFIP 0001; Chernow Aff., Ex. 3 at ¶18.

10.     The NFIP Policy covers flood loss to only 17 specific items located in a basement.  Apfel Decl., Ex. A at NFIP 0008.

11.     The "Other Insurance" clause of the Admiral Policy provides, in part, as follows:

> The Other Insurance Commercial Property Condition is replaced by the following with respect to the coverage provided under this endorsement:
>
> 1. If the loss is also covered under a National Flood Insurance Program (NFIP) policy, or if the property is eligible to be written under an NFIP policy but there is no such policy in effect, then we will pay only for the amount of loss in excess of the maximum limit that can be insured under that policy.  This provision applies whether or not the maximum NFIP limit was obtained or maintained, and whether or not you can collect on the NFIP policy. We will not, under any circumstances, pay more than the applicable Limit of Insurance for Flood as stated in the Flood Coverage Schedule or the Declarations of this Coverage Part.
>
> However, this Provision I.1. does not apply under the following circumstances:...
>
> b. An NFIP policy is not in effect because we have agreed to write this Flood Coverage Endorsement without underlying NFIP

14

coverage. <u>There is such an agreement only if the Flood Coverage
Schedule or the Declarations indicate that the Underlying
Insurance Waiver applies.</u>

Vigneaux Aff., Ex. A at 80 of 265 (emphasis added).

12.     The Flood Coverage Schedule of the Admiral Policy states: "**Underlying
Insurance Waiver:** Yes." Vigneaux Aff., Ex. A at 75 of 265 (emphasis in original).

13.     The Multiple Deductible Form of the Admiral Policy states in large and
bolded font: "___**Check here if underlying maximum NFIP policy limit required.**" Vigneaux
Aff., Ex. A at 81 of 265. That provision is not "checked" in the Admiral Policy. <u>Id.</u>

14.     The "Other Flood Insurance" section of the Flood Coverage Schedule says
"(NFIP")" but does not identify any insurance company or insurance policy. Vigneaux Aff., Ex.
A at 75 of 265.

15.     The Admiral Policy has a $50,000 flood deductible. Vigneaux Aff., Ex. A
at 75 of 265.

16.     173 Perry suffered damage from floodwaters and tidal overflow from
Superstorm Sandy. Chernow Aff., Ex. 2 at ¶16 and Ex. 3 at ¶16.

17.     West Perry promptly notified Admiral of the flood damage to 173 Perry
resulting from Superstorm Sandy and submitted a claim under the Admiral Policy for its losses
and for all other benefits due to it under the Admiral Policy. Chernow Aff., Ex. 2 at ¶20 and Ex.
3 at ¶20.

18.     West Perry also promptly notified Harleysville of the flood damage to 173
Perry Street and submitted a claim under the NFIP policy for the loss and for all other benefits
due to them under the NFIP Policy. Chernow Aff., Ex. 2 at ¶21 and Ex. 3 at ¶21.

19.     Harleysville agreed to pay only a portion of 173 Perry's flood losses under the NFIP Policy, contending that the remainder of 173 Perry's flood losses are not covered under the terms, conditions and exclusions contained in the NFIP Policy.  Chernow Aff., Ex. 2 at ¶23 and Ex. 3 at ¶23.

20.     West Perry submitted a claim under the Admiral Policy for the portion of its flood loss at 173 Perry that was not covered under the NFIP Policy (the "173 Perry Loss"). Chernow Aff., Ex. 2 at ¶24 and Ex. 3 at ¶24.

21.     Admiral refused to provide coverage for the 173 Perry Loss.  Chernow Aff., Ex. 2 at ¶25 and Ex. 3 at ¶25.

22.     Admiral's denial referenced the "Other Insurance" clause of the Admiral Policy, pursuant to which Admiral contended that the Admiral Policy is excess of the NFIP Policy and does not provide coverage for the 173 Perry Loss until the $3.25 million limit of the NFIP Policy is exhausted through the payment of covered losses.  Id.

23.     West Perry commenced this action on May 14, 2014 for Admiral's breach of contract under the Admiral Policy and for declaratory judgment on the obligations of Admiral for the 173 Perry Loss.  Chernow Aff., Ex. 2.

24.     Admiral filed its Answer and Affirmative Defenses on June 19, 2014. Chernow Aff., Ex. 3.

DATED:   New York, New York          ANDERSON KILL P.C.
         September 12, 2014

                                    By:   */s/ Dennis J. Artese*
                                          Dennis J. Artese, Esq.
                                          Rene F. Hertzog, Esq.
                                          1251 Avenue of the Americas
                                          New York, New York  10020
                                          Telephone:  212-278-1000
                                          Facsimile:   212-278-1733

                                          *Attorneys for Plaintiff*

nydocs1-1037298.2