Dennis J. Artese (DA-1427)
Rene F. Hertzog (RH-9227)
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733
dartese@andersonkill.com
rhertzog@andersonkill.com

*Attorneys for Plaintiff*
*Board of Managers of West Perry Condominium*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BOARD OF MANAGERS OF WEST PERRY CONDOMINIUM,<br><br>                         Plaintiff,<br><br>    - against -<br><br>ADMIRAL INDEMNITY COMPANY,<br><br>                         Defendant. | Civ. Action No. 14 CV 3471 (SHS) |

**PLAINTIFF BOARD OF MANAGERS OF WEST PERRY CONDOMINIUM'S**
**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................1

I.   THE ADMIRAL POLICY PROVIDES PRIMARY COVERAGE FOR LOSS
     NOT COVERED UNDER THE NFIP POLICY ................................................................1

     A.   Admiral's Interpretation of the Policy Language is Incorrect ..................................1

     B.   Admiral's Comparisons to Other Types of Policies and Coverages is
          Flawed As the Only Policy Language that is Relevant to the Court's
          Determination is that of the Admiral Policy ............................................................4

II.  ADMIRAL'S EXTRINSIC EVIDENCE IS INADMISSIBLE AND
     IRRELEVANT ...................................................................................................................6

     A.   Admiral's Affidavits Are Riddled with Conclusory and Irrelevant
          Statements Unsupported by Proof ...........................................................................6

     B.   Admiral Fails to Rebut Plaintiff's Waiver Argument to Any Effect ........................9

CONCLUSION................................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Alfin, Inc. v. Pacific Ins. Co.,
   735 F. Supp. 115 (S.D.N.Y. 1990) ...................................................................................... 8

General Star Indem. Co. v. Custom Editions Upholstery Corp.,
   940 F. Supp. 645 (S.D.N.Y. 1996) ...................................................................................... 8

Safeway Envtl. Corp. v. Am. Safety Ins. Co.,
   No. 08 Civ. 6977 (WHP), 2010 U.S. Dist. LEXIS 7011 (S.D.N.Y. Jan. 28, 2010) ................... 8

Taylor v. State Farm Fire & Cas. Co.,
   182 Cal. App. 3d 1042 (Cal. App. 2d Dist. 1986) ................................................................ 6

OTHER AUTHORITIES

Fed. R. Civ. P. 56(c)(4) ................................................................................................................ 7

Plaintiff Board of Managers of West Perry Condominium ("Plaintiff") respectfully submits this reply memorandum of law in further support of its Motion for Partial Summary Judgment on Count I of its Complaint.

## PRELIMINARY STATEMENT

Admiral[1] fails to provide any persuasive response to one critical question: If the Other Insurance provision of the Admiral Policy actually refers to any "flood occurrence" where it plainly says "loss," and the NFIP Policy clearly covers the risk of flood occurrences, why is the requirement that the "loss" also be covered under the NFIP Policy included in the provision at all? The answer to this is apparent, as Admiral chose language, which it now seeks to avoid, that expressly conditions the excess status of the Admiral Policy to the specific circumstance in which the "loss is also covered" by the NFIP Policy. Admiral's construction impermissibly renders superfluous the policy language requiring that the "loss" also be covered under an NFIP policy before the Admiral Policy can be considered excess, and there is no other logical construction of the language that gives the full provision meaning. Because the loss at issue here is not covered under the NFIP Policy, Admiral's coverage is immediately triggered and provides first-dollar coverage.

## ARGUMENT

### I. THE ADMIRAL POLICY PROVIDES PRIMARY COVERAGE FOR LOSS NOT COVERED UNDER THE NFIP POLICY

#### A. Admiral's Interpretation of the Policy Language is Incorrect

Admiral's argument to avoid its coverage obligations rests entirely on its flawed assertion that the term "loss" in the Other Insurance provision refers to any "occurrence" of

---

[1] Unless otherwise noted, defined terms retain the same meaning herein as given in Plaintiff's Memorandum of Law in Support of its Motion for Partial Summary Judgment, dated August 22, 2014 ("Pls. Opening Br.").

flood. As demonstrated in Plaintiff's opening brief and in its opposition to Admiral's motion for partial summary judgment,[2] however, Admiral did not use the term "occurrence" or "risk" or "peril" and cannot now contend that that is what it meant where instead the word "loss" is used in the provision. Admiral asserts that only its interpretation – that "loss" actually means "flood occurrence" – allows for the full provision to be given meaning. Admiral is wrong.

As Plaintiff fully explained in its prior papers submitted to the Court, Admiral's interpretation that "loss" as used in the provision actually means (though without anywhere saying) "flood occurrence," renders meaningless the entire first part of the provision. Under Admiral's interpretation, the provision means that Admiral provides excess coverage only under all circumstances of flood. For Admiral's interpretation to be correct, the provision need read no more than simply: "This policy is excess to any NFIP Policy maintained by West Perry." Of course, that is not at all the language of the Other Insurance clause and Admiral's interpretation wholly ignores the entire first clause that reads: "[I]f the loss is also covered under a National Flood Insurance Program (NFIP) policy…." Admiral's interpretation skips directly to the second clause: "we will pay only for the amount of loss in excess" and neither accounts for nor sufficiently explains the meaning of the first clause.

Admiral insists that only its interpretation gives consistent meaning to the word "loss" in each provision of the clause. And yet, it is Admiral's reading that renders the provision superfluous and without meaning. Inserting Admiral's words into the clause leaves a curious result, as the second part of the provision then reads: "we will pay only for the amount of [flood occurrence] in excess of the maximum limit that can be insured under [the NFIP] policy."

---

[2] Plaintiff incorporates by reference its Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment and in Support of Plaintiff's Cross-Motion to Strike, dated September 12, 2014 (Dkt. No. 29) ("Plaintiff's Opp. Br.") and the declarations and exhibits attached thereto.

Moreover, in an attempt to refute Plaintiff's argument that Admiral's interpretation renders the requirement that the loss also be covered under the NFIP Policy mere surplusage, Admiral points out that "'Flood' has a very specific definition under the NFIP Policy." (Def's Opp. Br., p. 11.) Admiral implies that the definition of "flood" is broader in the Admiral Policy than it is in the NFIP Policy and that there may be instances in which a "flood occurrence" may be covered under the Admiral Policy but not covered under the NFIP Policy, thereby giving meaning to the first part of the provision. In fact, the definitions of "flood" in each policy are virtually identical. The NFIP Policy defines "flood" as follows:

> Flood, as used in this flood insurance policy, means:
>
> 1.   A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from:
>
>    a. Overflow of inland or tidal waters;
>
>    b. Unusual and rapid accumulation or runoff of surface waters from any source;
>
>    c. Mudflow.

(Apfel Decl., Ex. B, at p. 7 of 26.)

The Admiral Policy defines "flood" nearly identically:

> Flood, meaning a general and temporary condition of partial or complete inundation of normally dry land areas due to:
>
> 1. The overflow of inland or tidal waters;
>
> 2. The unusual or rapid accumulation or runoff of surface waters from any source; or
>
> 3. Mudslides or mudflows which are caused by flooding as defined in C.2 above. For the purpose of this Covered Cause Of Loss, a mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

(Apfel Decl., Ex. A, at p. 68 of 223.)

Regardless of whether Admiral's statement that "the NFIP Policy does not cover every flood event" is true, (Def's Opp. Br., at p. 12), what is apparent from a comparison of the two "flood" definitions is that the NFIP Policy does cover every "flood event" that the Admiral Policy covers. As such, Admiral's interpretation of the Other Insurance provision cannot be correct as every "loss" (i.e., "flood occurrence," as interpreted by Admiral) covered under the Admiral Policy would also be covered under the NFIP Policy. The end result of Admiral's "two-step inquiry" (Def's Opp. Br., at p. 12) would always be the same, thereby impermissibly rendering superfluous the requirement that the loss also be covered under the NFIP Policy.

Admiral's only other response, that "Plaintiff's interpretation ignores the clear import of the language 'we will pay only for the amount of loss in excess of the maximum limit,'" both avoids the issue and is incorrect. Plaintiff fully refutes this argument and Admiral's other "plain meaning" arguments in its Opposition Brief at pages six through nine, which Plaintiff incorporates in full by reference herein.

**B.     Admiral's Comparisons to Other Types of Policies and Coverages is Flawed As the Only Policy Language that is Relevant to the Court's Determination is that of the Admiral Policy**

Admiral refutes IRMI's interpretation of the Flood Coverage Endorsement, asserting that Plaintiff is construing "wrap around" to be synonymous with "drop down." Plaintiff is not arguing that the Admiral Policy "drops down." Instead, Plaintiff submits that Admiral's "drop down" argument is simply irrelevant because the Admiral Policy is not a true excess policy, but provides excess coverage only under specific conditions, i.e., where "the loss is also covered" under the NFIP Policy. Where, like here, that condition is not met, then the Admiral Policy provides first-dollar primary coverage for the flood loss that is covered under the

Admiral Policy. As such, there is no reason for the Admiral Policy to "drop down."[3]

Indeed, Admiral's explanation that "wrap around" refers to the Flood Coverage Endorsement's coverage for "all other perils" not covered by the NFIP Policy defies logic. The Flood Coverage Endorsement covers the "peril" of flood only. The NFIP Policy also covers the "peril" of flood only. The only "peril" at issue is flood. There are no other "perils" for which the Flood Coverage Endorsement possibly can provide "wrap around" coverage to the NFIP Policy.

Similarly, Admiral's attempt to dissect IRMI's construction of the Flood Coverage Endorsement with reference to other, irrelevant sources fails. The IRMI commentary could not be more clear where it states that "the ISO flood coverage endorsement … 'wraps around' rather than 'follows' the NFIP Policy," meaning that "<u>the flood coverage endorsement applies on a first-dollar basis with respect to coverage that is provided under the commercial property policy to which it is attached but not provided under an NFIP Policy</u>." (Hertzog Decl., Ex. 3) (emphasis added)).

Not one of Admiral's "sources" addresses an NFIP Policy or a flood coverage endorsement. Admiral cites instead to an assortment of irrelevant explanations of "wrap around" coverage, including in the employment practices liability context where a "wrap around" policy may provide coverage for punitive damages (Chernow Opp. Aff., Ex. 1); a high cost major medical health insurance policy (Chernow Opp. Aff., Ex. 2); employee health benefits coverage (Chernow Opp. Aff., Ex. 3); and a repair or replacement cost application supplement (Chernow Opp. Aff., Ex. 4). None of these documents have any bearing at all on the application of the Flood Coverage Endorsement and the NFIP Policy at issue before this Court. Further, in the case

---

[3] Plaintiff incorporates in full the arguments submitted in Plaintiff's Opp. Br. at pages 11-17 on this point.

cited by Admiral for the meaning of a "wrap around" policy, the opinion notes that the purpose was to "supplement" the other fire policy. See Taylor v. State Farm Fire & Cas. Co., 182 Cal. App. 3d 1042 (Cal. App. 2d Dist. 1986) (Chernow Opp. Aff., Ex. 6). The article concerning the employee health benefits coverage states that "the wraparound plan covers benefits ... <u>not covered by the individual health insurance coverage</u>." (Chernow Opp. Aff., Ex. 3 (emphasis added)). To the extent these "sources" support an interpretation offered by the parties here, they indisputably support and are analogous to the interpretation proffered by Plaintiff, as each makes clear that the "wrap around" policy provides coverage where another policy does not. That is precisely the result contemplated by the Other Insurance provision of the Admiral Policy, which states that the Admiral Policy provides excess flood coverage only for loss also covered under the NFIP Policy.

Moreover, the additional commentary submitted by Admiral – which is not authored by IRMI but by a risk consulting firm – does not provide the Court with any guidance here. (See Chernow Opp. Aff., Ex. 5.) The specific section cited by Admiral in its brief (at p. 8) does not address the ISO Flood Coverage Endorsement here, but is merely presenting hypothetical situations for an entity considering flood coverage options. In that hypothetical, the NFIP is the underlying flood policy with another, unidentified property policy providing excess coverage, but there is no suggestion that an NFIP Policy must always be primary and another policy that covers the risk of flood need always be excess.

## II. ADMIRAL'S EXTRINSIC EVIDENCE IS INADMISSIBLE AND IRRELEVANT

### A. Admiral's Affidavits Are Riddled with Conclusory and Irrelevant Statements Unsupported by Proof

A party moving for or opposing partial summary judgment under Federal Rule of Civil Procedure 56 may submit a sworn statement in support of its motion or opposition. That

affidavit, however, must provide more than conclusory statements unsupported by personal knowledge or evidence. Indeed, Fed. R. Civ. P. 56(c)(4) requires that any affidavit used to support or oppose a motion "must be made on personal knowledge...." Here, in opposing Plaintiff's motion, Admiral relies on two affidavits. First, the affidavit of Jay Vigneaux, submitted by Admiral in support of its own motion for partial summary judgment (Dkt. No. 20, Ex. 1.) To the extent that Admiral relies on Mr. Vigneaux's affidavit here, Plaintiff refers the Court to Plaintiff's Cross-Motion to Strike Mr. Vigneaux's affidavit (Dkt. No. 28), and the accompanying Memorandum of Law (Dkt. No. 29, at pp. 23-25). Mr. Vigneaux does not have personal knowledge of the matters to which he attests, and Plaintiff argues in its cross-motion that the affidavit, or portions thereof, should be stricken, including at a minimum, paragraphs 5, 10, and 12-15, and Exhibits B and C.

The affidavit of Jodi Strum that Admiral submits here – but did not submit in support of its motion – suffers from many of the same infirmities. Ms. Strum states that she currently is an underwriter for Admiral, but at the time of the loss she was employed in an unspecified position by Clermont Specialty Managers. (Strum Aff., ¶¶ 2-3.) Ms. Strum makes conclusory statements with respect to what the underwriters – not West Perry – knew or understood at the time the Admiral Policy was underwritten, but the documents she relies on were not written by her, do not contain her notes, and, to the extent she attended meetings to which the notes purport to relate, she does not testify that the notes are consistent with her memory of those meetings. (Strum Aff., ¶¶ 5-8, Exs. A, D.)

Ms. Strum's averments as to Exhibits A-D of her affidavit, to the extent they are considered at all here, merely purport to establish that Admiral was aware of the existence of the NFIP Policy for 173 Perry at the time of the underwriting of the Admiral Policy. Nothing

contained therein, however, purports to suggest that Admiral's coverage would be excess of the NFIP Policy even for loss not covered under the NFIP Policy. Indeed, even Admiral does not make such a claim.

Ms. Strum also comments on "ISO Rule 76." (Strum Aff., Ex. E.) As an initial matter, there is nothing on the face of the document that identifies it as an ISO document. Id. Additionally, and significantly, the "Other Insurance" language in the "Rule 76" document differs substantially from what the Admiral Policy says inasmuch as the "Rule 76" document omits the critical requirement that the loss also be covered under the NFIP Policy in order for Admiral's flood coverage to be considered excess. Ms. Strum does not purport to testify that she or Admiral relied on or even had a copy of "Rule 76" when the Admiral Policy was being underwritten. Nor does Ms. Strum say that a copy of "Rule 76" was provided to West Perry during the underwriting of the Admiral Policy or at any time thereafter to explain Admiral's position on the coverage.[4]

Where only one reasonable interpretation of policy language exists, the words are given effect as written. Safeway Envtl. Corp. v. Am. Safety Ins. Co., No. 08 Civ. 6977 (WHP), 2010 U.S. Dist. LEXIS 7011, at *6 (S.D.N.Y. Jan. 28, 2010). This Court may consider extrinsic evidence only where the policy language is ambiguous. See, e.g., Alfin, Inc. v. Pacific Ins. Co., 735 F. Supp. 115, 120 (S.D.N.Y. 1990) (citations omitted). Moreover evidence of unilateral intent is not relevant. General Star Indem. Co. v. Custom Editions Upholstery Corp., 940 F. Supp. 645, 655 (S.D.N.Y. 1996) (finding that the "subjective views of the [insurance company's] officials, never communicated to the [policyholder] until . . . litigation cannot establish the

---

[4] While Admiral takes pains to correct Plaintiff's explanation of ISO (Def's Opp. Br., p. 9 n.2), the exercise is meaningless as Admiral does not disagree that ISO authored the Flood Coverage Endorsement that Admiral chose to use, not West Perry. Further, Plaintiff is not suggesting that the Flood Coverage Endorsement is in any way invalid or void, but simply that Admiral's interpretation is flawed.

parties' intent."). Since it is undisputed that the relevant language in "Rule 76" differs materially from that used in the Admiral Policy, and that "Rule 76" was never shared with West Perry, at best it constitutes irrelevant and inadmissible evidence of Admiral's unilateral intent.

Additionally, while Admiral argues that *contra proferentum* should not apply because West Perry, a collective group of homeowners, is a sophisticated insured represented by a professional broker, nowhere does Admiral state that West Perry did in fact negotiate any part of the Admiral Policy's language. While certainly it is hypothetically possible that a policyholder could play a significant role in developing the language of a policy, neither Ms. Strum's affidavit nor anything else submitted by Admiral contends that happened here.

All that the Court need consider here is the plain language of the Admiral Policy. However, even if the Court finds that the language is ambiguous, the extrinsic evidence offered by Admiral, demonstrating nothing more than its irrelevant unilateral intent, should not be considered, and the language should be construed against Admiral as drafter.[5]

### B. Admiral Fails to Rebut Plaintiff's Waiver Argument to Any Effect

Admiral makes only conclusory statements refuting Plaintiff's argument that Admiral waived any requirement that West Perry maintain NFIP coverage. (Def's Opp. Br., p. 18.) Admiral asserts that the "Underlying Insurance Waiver" is only relevant to 176 Perry. However, nothing on the face of the Flood Coverage Schedule supports this conclusion. (Apfel Decl., Ex. A, p. 66 of 223.) Indeed, both 176 Perry and 173 Perry are listed in the "Description of Premises or Location(s)" on the Flood Coverage Schedule. (Apfel Decl., Ex. A, p. 66 of 223.) Similarly, Admiral asserts that the unchecked box on the "Multiple Deductible Form" also applies only to 176 Perry. But there is simply no indication whatsoever on the face of the

---

[5] Plaintiff notes that it has not had the opportunity to take any discovery or to cross-examine Ms. Strum on her role and recollections with respect to the Admiral Policy's underwriting.

document to support that assertion. Moreover, Admiral has never sought to reform the policy based on mutual mistake or any other basis. The Admiral Policy says what it says, and could not be more clear that Admiral in fact waived any requirement that West Perry maintain NFIP coverage for either building.

Further, Admiral's discussion of the language of the waiver clause fails to take into account the entire provision. Admiral asserts that paragraph I.1.b "makes clear that the Underlying Insurance Waiver only applies where an NFIP Policy is not in effect." But the provision goes on to say that the "NFIP Policy is not in effect <u>because we have agreed to write this Flood Coverage Endorsement without underlying NFIP coverage</u>." (Apfel Decl., Ex. A, p. 71 of 223 (emphasis added)). While an NFIP policy was in fact in effect for 173 Perry at the time of the subject loss, principles of fairness and equity prevent Admiral from evading its coverage obligations on this basis where it so clearly waived any requirement for such coverage. (See Pls.' Opening Br. at 15-18.)

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order as requested in its moving papers.

Dated: September 19, 2014  **ANDERSON KILL P.C.**

By: /s/ Dennis J. Artese
Dennis J. Artese, Esq. (DA-1427)
Rene F. Hertzog, Esq. (RH-9227)
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1000

*Attorneys for Plaintiff*
*Board of Managers of West Perry Condominium*