UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X

BOARD OF MANAGERS OF WEST PERRY
CONDOMINIUM
                Plaintiff,

    -against-

ADMIRAL INDEMNITY COMPANY

                Defendant.
———————————————————————X

Civil Action No.
14 CV 3471 (SHS) (HBP)

# DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

*Jonathan S. Chernow (JSC-7339)*
*Benjamin A. Fleischner (BAF-7006)*
*Eric R. Leibowitz, Esq. (EL-5488)*
*Of Counsel*

## TABLE OF CONTENTS

Table of Authorities.................................................................................. ii

Preliminary Statement............................................................................ 1

Argument ............................................................................................... 2

POINT I:   ADMIRAL HAS SUFFICIENTLY DEMONSTRATED THAT THE ADMIRAL POLICY PROVIDES ONLY EXCESS COVERAGE FOR ANY FLOOD LOSS

    a. The "Other Insurance" Clause Provides That Admiral's Coverage is Excess of the Maximum Limit of the NFIP Policy For Any Flood Loss......... 3

    b. Admiral's "Drop-Down" and "Difference in Conditions" Arguments are Relevant....................................................................... 7

POINT II:  THE "OTHER INSURANCE" CLAUSE IS NOT AMBIGUOUS, AND EVEN IF IT WERE, IT SHOULD NOT BE CONSTRUED AGAINST ADMIRAL....................................................................... 9

Conclusion.............................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Builders Mut. Ins. Co. v. Parallel Design & Dev. Co.*,
785 F. Supp. 2d 535 (E.D. Va. 2011) ...................................................................................... 2

*Colson Services Corp. v. Ins. Co. of N. Am.*,
874 F. Supp. 65 (S.D.N.Y. 1994) ............................................................................................ 9

*County of Columbia, v. Continental Insurance Company, et al.*,
83 N.Y.2d 618, 634 N.E.2d 946, 612 N.Y.S.2d 345 (1994). .................................................. 3

*Cummins, Inc. v. Atlantic Mut. Ins. Co.*,
56 A.D.3d 288, 867 N.Y.S.2d 81 (1st Dep't 2008) ............................................................... 10

*Eastern Air Lines, Inc. v. Ins. Co. of the State of Pennsylvania*,
96 Civ. 7113 (MGC), 2001 U.S. Dist. LEXIS 14734 (S.D.N.Y. Sept. 21, 2001 ..................... 10

*Fincher v. J.C. Penney Casualty Ins. Co.*,
520 So. 2d 532 (Ala. Civ. App. 1988)...................................................................................... 9

*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*,
230 F.3d 549 (2d Cir. 2000) ..................................................................................................... 3

*Mission National Ins. Co v. Duke Transportation Co., Inc.*,
792 F.2d 550 (5th Cir. 1986) .................................................................................................... 8

*Pergament Distributors v. Old Republic Ins. Co.*,
128 A.D.2d 760, 513 N.Y.S.2d 467 (2d Dep't 1987) ............................................................... 8

*Pine Grove v. Indiana Lumbermens Mutual Ins. Co.*,
2010 U.S. Dist. LEXIS 112188 (M.D. Pa. 2010) ..................................................................... 8

*Sentry Select Ins. Co. v. Acuna*,
2011 U.S. Dist. LEXIS 131940 (E.D. Va. Nov. 15, 2011) ..................................................... 3

*United States Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*,
873 F.2d 731 (4th Cir. 1989)..................................................................................................... 2

Defendant ADMIRAL INDEMNITY COMPANY ("ADMIRAL") respectfully submits this Reply Memorandum of Law in further support of ADMIRAL's motion for partial summary judgment pursuant to Fed. R. Civ. P. 56, which seeks an Order: (1) granting partial summary judgment on the Third and Fourth Affirmative Defenses of Defendant's Answer, and a declaration that the Admiral Policy at issue is excess over the NFIP Policy's flood coverage for the property located at 173 Perry Street, and that ADMIRAL has no obligation to drop down and provide primary coverage for the 173 Perry loss until the $3,250,000.00 million limit of the NFIP Policy is exhausted through the payment of covered losses; and (2) dismissing Count I of Plaintiff's Complaint in its entirety.

## Preliminary Statement

Plaintiff's primary argument in opposition to ADMIRAL's motion for partial summary judgment misses the forest for the trees. Plaintiff argues that the "Other Insurance" clause relied upon by ADMIRAL applies only to "loss" that is covered under the NFIP Policy, and here, according to Plaintiff, the loss claimed by the Insured is not covered under the NFIP Policy. Plaintiff essentially ends its analysis there, attempting to distinguish ADMIRAL's interpretation and supporting case law on excess exposure by claiming that the second part of the provision (i.e., "we will pay only for the amount of loss <u>in excess of the maximum limit</u> that can be insured under that policy") is simply never triggered. It is well-settled that policies are to be read as a whole, and interpretations that give a meaning to all terms of a contract are preferable to ones that leave a portion of the writing superfluous or inexplicable. However, Plaintiff merely responds point by point to ADMIRAL's interpretation, but fails to explain what is meant by the phrase "excess of the maximum limit," and how the phrase is part of a cohesive whole describing the trigger point of the ADMIRAL coverage. In contrast to Plaintiff's interpretation,

1

ADMIRAL's interpretation harmonizes all parts of the provision. The test is not whether any particular item is covered or not under the NFIP Policy, as Plaintiff contends, but that in the event coverage under the NFIP Policy is triggered by a covered flood occurrence, the Admiral Policy simply does not attach until that covered loss exceeds the maximum applicable NFIP limit, whether an NFIP policy is purchased or not.. Second, the precedent cited by ADMIRAL holding that an excess policy does not "drop down" is directly relevant, persuasive, and determinative to this case. Third, the term "loss" in the "Other Insurance" clause in the Admiral Policy is not ambiguous, and even if it were, the doctrine of *contra proferentem* is not warranted under these circumstances, where the Insured was represented by an experienced professional broker during policy negotiations and there is no precedent indicating that the presence of ISO language in a policy automatically renders *contra proferentem* applicable.

## Argument[1]

---

[1] Plaintiff argues in a footnote that Admiral's motion is procedurally flawed because it seeks affirmative relief in the form of a declaration that the Admiral Policy is excess, yet Admiral has not lodged any counter-claim for such relief. This argument is contrary to established jurisprudence on Fed. R. Civ. P. 56. Federal courts can enter a declaration in a defendant's favor sua sponte, notwithstanding the absence of a counterclaim for affirmative relief. *See Sentry Select Ins. Co. v. Acuna*, 2011 U.S. Dist. LEXIS 131940, *21 (E.D. Va. Nov. 15, 2011) (holding that "[a]lthough the defendants have not filed a counterclaim for a declaration in its favor or otherwise asked for affirmative relief, the Court, *sua sponte*, will declare as a matter of law that Sentry has a duty to defend Acuna in the state court action and will enter judgment in defendants' favor for that relief.); *see also Builders Mut. Ins. Co. v. Parallel Design & Dev. Co.*, 785 F. Supp. 2d 535, 552 & n.9 (E.D. Va. 2011) ("While Fed. R. Civ. P. 56 does not expressly provide that district courts may enter summary judgments sua sponte, there can be little doubt that district courts inherently possess that power.") (*quoting United States Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989)). "[B]efore granting such relief, the Court must provide the losing party with an adequate opportunity to demonstrate a genuine issue of material fact." *Builders Mut. Ins. Co., supra, at 552* (internal quote and citation omitted). Here, Plaintiff was given a full opportunity in briefing to present legal and factual arguments with respect to the motion for summary judgment. Indeed, it has lodged its own motion for partial summary judgment dealing with the exact same issues. In any event, if the Court denies Plaintiff's motion for a declaration that the Admiral Policy is primary, then the obvious implication is that the Admiral Policy is excess, which is the very relief ADMIRAL seeks in its motion.

In addition, Plaintiff argues that the Court only permitted the parties to move for summary judgment on Count I of the Complaint, and ADMIRAL's motion is improper because it requests summary judgment on the Third and Fourth Affirmative Defenses of its Answer. However, ADMIRAL's Third and Fourth Affirmative Defenses directly relate to Count I of the Complaint and, therefore, Plaintiff's argument that ADMIRAL has moved in contravention to the Court's directive is more a matter of form over substance. (***See* ADMIRAL's Answer at 13-15 (Docket No. 7).**) ADMIRAL had to move on some ground, so it moved on the affirmative defenses that directly rebut and contradict Count I, in accordance with the Court's Order. Thus, ADMIRAL's motion should not be denied on either basis.

**POINT I:    ADMIRAL HAS SUFFICIENTLY DEMONSTRATED THAT THE ADMIRAL POLICY PROVIDES ONLY EXCESS COVERAGE FOR ANY FLOOD LOSS**

    **a.    The "Other Insurance" Clause Provides That Admiral's Coverage is Excess of the Maximum Limit of the NFIP Policy For Any Flood Loss**

The crux of the parties' dispute lies in the interpretation of the following "Other Insurance" provision in the Admiral Policy:

> 1. <u>If the loss is also covered under a National Flood Insurance Program (NFIP) policy</u>, or if the property is eligible to be written under an NFIP policy but there is no such policy in effect, <u>then we will pay only for the amount of loss in excess of the maximum limit that can be insured under that policy</u>. This provision applies whether or not the maximum NFIP limit was obtained or maintained, and <u>whether or not you can collect on the NFIP policy</u>.

(Emphases added). **(See Affidavit of Jay Vigneaux ("Vigneaux Aff.") ¶ 7, Exhibit "A," at Form CP 10 65 10 00, at Page 4 of 4.)** In its opposition, Plaintiff contends that all of ADMIRAL's arguments regarding the nature of excess coverage must fail because the Admiral Policy's excess coverage applies only under certain conditions, which Plaintiff claims are not met here: "the policyholder sustains loss resulting from flood, and that is loss is <u>covered</u> by the NFIP Policy." **(Plaintiff's Opp. Br. at 3.)** In Plaintiff's view, "loss" refers to the damage to particular items of property caused by the peril of flood as defined in the NFIP policy. Plaintiff essentially ends its analysis there, ignoring the second use of the word "loss" in the remainder of the provision because, in its view, that part of the provision is never triggered. This is in direct contravention to principles of policy interpretation, which requires interpretation of the policy as a whole, rather than ending an interpretative analysis with the first few words that leave a portion of the writing superfluous or inexplicable simply because the proponent believes the rest of the clause is not triggered. *See Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549 (2d Cir. 2000) and *County of Columbia v. Continental Insurance Company, et al.*, 83 N.Y.2d 618, 634 N.E.2d 946, 612 N.Y.S.2d 345 (1994).

3

In contrast to Plaintiff's interpretation of the "Other Insurance" provision, ADMIRAL's interpretation affords the same meaning to the word "loss" in both instances in which it is used. The fact that the Admiral Policy is excess even if no NFIP coverage is purchased makes it clear that the policy is referring to a type of loss, i.e., flood, rather than coverage for a specific item of damaged property. When read as a whole, the entire provision makes clear that the word "loss" as used in the first part of the sentence has the same meaning as the word "loss" in the second part of the sentence, and means a <u>flood occurrence</u>. It is telling that the provision at issue does not make a single reference to coverage for specific items of property, and irrefutably states it is <u>excess of a "limit."</u> As such, the test is not whether any particular item is covered or not under the NFIP Policy, as Plaintiff contends, but that in the event coverage under the NFIP Policy is triggered by a covered flood occurrence, the Admiral Policy simply does not attach until that covered loss exceeds the maximum applicable NFIP limit.

Contrary to Plaintiff's assertion, the Flood Coverage Endorsement specifically replaced the words "in excess of the amount due" with "<u>excess of the maximum limit</u>," thereby making clear that ADMIRAL is only liable for amounts in excess of the maximum available NFIP limit Plaintiff declares this distinction meaningless because, in its view, flood occurrences are covered 100% of the time under the NFIP Policy, and the requirement in the provision would be met each and every time flood loss occurs. However, not only is this argument irrelevant to the interpretation of the clause, but Plaintiff ignores the fact that the peril of "Flood" is a defined term in the NFIP Policy, and thus the NFIP Policy may not cover each and every flood occurrence.[2] (*See* **Compl., Ex "B," NFIP Policy, Section II.A.1 ("Definitions").**)

---

[2] As discussed in ADMIRAL's opening brief, Plaintiff has never advised ADMIRAL as to the basis for the alleged denial of coverage by Harleysville for certain items **(see Vigneaux Aff. ¶ 19)**. It may be that the items for which WEST PERRY seeks coverage are excluded under the Admiral Policy, and in any event, it is not clear whether ADMIRAL would fully accept the determination by Harleysville or the Insured about what is covered.

4

In addition, Plaintiff quibbles with ADMIRAL's reference to the Deductible provision's use of the word "losses" as proof that ADMIRAL meant that "loss" in the "Other Insurance" provision applied to a singular "loss occurrence." According to Plaintiff, given the Deductible provision's reference to "separate Limits of Insurance," "losses" as used therein refers to a loss that triggers multiple coverages. **(Pl. Opp. Br. at 7.)** However, Plaintiff's argument, even if correct, is simply unavailing. Separate limits of insurance can apply to various type of covered property at each location. This is consistent with the Deductible provision's use of the term "losses" when discussing multiple items of damaged property." In contrast, "loss" in the "Other Insurance" provision is referred to in the singular, and is thus meant to refer to "one occurrence of loss or damage" caused by flood rather than reference to different items damaged by flood.

Next, Plaintiff refers to examples elsewhere in the Admiral Policy in which ADMIRAL distinguishes between covered items, such as the Cooperative and Condominium Enhanced Coverage Endorsement Property Endorsement. **(Pl. Opp. Br. at 8.)** Plaintiff concludes, without further justification, that "loss" in the "Other Insurance" clause must be referring to different items that may or may not be covered. However, the two provisions are not similar at all. Indeed, the differences between the wordings only supports ADMIRAL's point that "loss" in the "Other Insurance" provision is not referring to different items that are damaged by flood.

Plaintiff also takes issue with ADMIRAL's argument that if no NFIP policy were in place, the Insured would not be able to conduct the item-by-item analysis West Perry has sought here and there would be no policy setting forth which items were covered property and which items were not covered property so that the insurer could determine the trigger of coverage and assess its exposure. Plaintiff argues that there is no guesswork involved in determining what is or not covered under an NFIP policy because there are only three specific forms available on

5

FEMA's website. **(Pl. Opp. Br. at 8-9.)** While the forms are available, the fact that there are hundreds, if not thousands, of Sandy suits pending in the Courts of New York and New Jersey over exactly what the NFIP form covers is testament to the absurdity of the proposition. Simply put, it is illogical to assert that ADMIRAL should proceed to adjust an NFIP claim for no reason in order to assess the attachment point of coverage the parties agreed was "excess of the maximum limit that can be insured" even if "there is no such policy in effect," and which applies "whether or not the maximum NFIP limit was obtained or maintained."

More egregiously, however, Plaintiff's theory of coverage is internally inconsistent, effectively reading out portions of the "Other Insurance" provision. Plaintiff concedes that if an NFIP policy is in effect, and if the loss is covered by that policy, the "Other Insurance" provision is triggered and ADMIRAL's coverage is excess of the amount the NFIP policy pays. However, if no NFIP Policy is in effect, Plaintiff suggests that ADMIRAL must consult generic NFIP policy forms to see what would be covered, and ADMIRAL should pay what is in excess of what the NFIP policy would pay if it were in effect.

In either scenario, absolutely no credence is given to the phrase "in excess of the maximum limit" because Plaintiff suggests that ADMIRAL will pay in excess of what is covered under the NFIP Policy whether purchased or not. That the attachment point is the "maximum limit" available or not would simply not matter. Thus, Plaintiff's theory ignores the import of the "Other Insurance" provision when read as a cohesive whole. ADMIRAL could not be excess of something that does not exist unless the threshold is a theoretical limit of insurance, rather than a loss or items of loss that are actually covered, as Plaintiff maintains. In addition, if Plaintiff's interpretation were correct, ADMIRAL would have greater exposure if the Insured purchased NFIP insurance than if the Insured did not purchase NFIP insurance. There is simply

6

no dual threshold. Under both scenarios, ADMIRAL's exposure should be the same, i.e., excess over the maximum NFIP limit, whether an NFIP policy is purchased or not.[3]

Simply put, Plaintiff has studiously ignored what is meant by the phrase "excess of the maximum limit," and that the phrase is part of a single sentence describing the trigger point of the ADMIRAL coverage. The logical extension of Plaintiff's analysis is that ADMIRAL must determine whether an item is covered or not covered under NFIP terms and whether or not an NFIP policy is in effect. If this were true, ADMIRAL would always drop down to provide coverage, and the remainder of the "Other Insurance" provision would be mere surplusage.

### b. Admiral's "Drop-Down" and "Difference in Conditions" Arguments are Relevant

In its opposition papers, Plaintiff tries to distinguish the cases ADMIRAL cited in its moving papers for the proposition that excess insurers do not "drop down" to fill in gaps of coverage left by the primary insurance company's failure to pay for a covered claim.[4] **(Pl. Opp. Br. at 11-17.)** Plaintiff sweepingly asserts that all such precedent is irrelevant, because the "Other Insurance" provision at issue here dictates that the Admiral Policy becomes excess only where specific circumstances are met. As set forth above, Plaintiff's interpretation of the "Other Insurance" provision is flawed. In any event, Plaintiff also notes that the cases cited are either not binding on this Court or analyze policy language that is not similar to the language of the

---

[3] Plaintiff also points out that the clause "if the property is eligible to be written under an NFIP policy but there is no such policy in effect" is consistent with its interpretation because the property at issue here is property not covered, and therefore not eligible to be written, under the NFIP Policy. However, for the same reasons set forth above, there is simply no support for Plaintiff's interpretation that the provision is referring to individual items of property damaged by flood. Plaintiff is conflating whether a building or location is eligible for flood coverage with the specific terms of what the NFIP Policy actually covers once coverage is obtained for the eligible property.

[4] Plaintiff also reiterates the arguments made in its own motion that the Admiral Policy does not have the typical hallmarks of an excess policy. ADMIRAL has discussed and refuted Plaintiff's arguments at length in its Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment, and hereby incorporates by reference the contents of those documents, filed with the Court on September 12, 2014 (*See* **Def.'s Opp. Br. at 16-18, Docket Nos. 26.)**

Admiral Policy here.[5] In support of its own motion, however, Plaintiff relied only on general New York law on contract interpretation and "other insurance" provisions, non-binding commentary from the International Risk Management Institute ("IRMI"), and two factually distinguishable cases interpreting other policies issued by ADMIRAL with generic "Other Insurance" provisions in the context of the third-party duty to defend. (*See* **Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at 7-15 (Docket No. 14).**) Indeed, Plaintiff did not cite to a single case within New York interpreting the specific policy language at issue. To the extent that this Court determines that there is no binding precedent interpreting the exact provision at issue, other jurisdictions contain persuasive authority on cases dealing with unaligned excess and primary coverage in the NFIP context.

Plaintiff's view of the "Other Insurance" provision in the Admiral Policy depends on interpretation of the terms "loss" and "covered." To that end, contrary to Plaintiff's assertion, it is instructive that some courts have interpreted the words "covered" and "not covered" in decisions holding that excess insurers should not drop down to provide primary coverage. *See, e.g., Pergament Distributors v. Old Republic Ins. Co.*, 128 A.D.2d 760, 761, 513 N.Y.S.2d 467 (2d Dep't 1987) (the terms "covered" and "not covered" in the context of describing the limits of the insurer's liability did not reflect an intention to have the excess insurer drop down depending on the amounts paid by the underlying carrier, stating "[w]hen used in this context, the terms 'covered' and 'not covered' refer to whether the policy insures against a certain risk not whether the insured can collect on an underlying policy."); *Mission National Ins. Co v. Duke Transportation Co., Inc.*, 792 F.2d 550, 553 (5th Cir. 1986) (words "covered" and "not covered"

---

[5] Plaintiff also apparently takes issue with the court's reasoning in *Pine Grove v. Indiana Lumbermens Mutual Ins. Co.*, 2010 U.S. Dist. LEXIS 112188 (M.D. Pa. 2010), and declares without justification that the court erred in considering the claims adjuster's interpretation of the policy coverage. Notwithstanding Plaintiff's protests, the decision remains in effect and has not been reversed on appeal.

in the excess policy do not result in drop down coverage, stating: "when an excess insurer uses the term 'covered' or 'not covered,' it is agreeing to drop down only in the event that the terms of the underlying policy do not provide coverage for the occurrence or occurrences in question.").

Plaintiff attempts to distinguish these cases because of the presence of the word "occurrence" in the policy language. **(Pl. Opp. Br. at 14-15.)** However, the court's holdings did not cite the "occurrence" language, instead focusing on the interpretation of the words "<u>covered</u>" and "<u>not covered</u>." Indeed, there is no indication that the presence of the term "occurrence" was material or necessary to each court's rationale. Further, "an ambiguity is not created simply because the parties to an insurance contract put forward different interpretations of its terms, particularly 'where one of two competing constructions is strained or unnatural.'" *Colson Services Corp. v. Ins. Co. of N. Am.*, 874 F. Supp. 65, 68 (S.D.N.Y. 1994) (citation omitted). Simply because Plaintiff argues that ADMIRAL could have used different language, does not mean that the Policy is ambiguous or wrong as written.[6]

**POINT II:  THE "OTHER INSURANCE" CLAUSE IS NOT AMBIGUOUS, AND EVEN IF IT WERE, IT SHOULD NOT BE CONSTRUED AGAINST ADMIRAL**

Plaintiff reiterates its argument that the "Other Insurance" provision is ambiguous and should be construed against Admiral.[7] For the reasons set forth above, the provision is not ambiguous but clearly provides that ADMIRAL's coverage is excess of the maximum available NFIP limit. In any event, Plaintiff's protestations that it is only a collective group of

---

[6] Plaintiff also takes issue with Admiral's stance that Plaintiff is improperly attempting to convert the Admiral Policy into a difference in conditions policy because the cases relied on are either out-of-jurisdiction or otherwise employ different policy language. **(Pl. Opp. Br. at 17-18.)** For the same reasons set forth above, this argument is unavailing, and the Court is not required to find an ambiguity simply because the insurer could have used different language, or because "an insured suggests a different construction of a policy provision." *Fincher v. J.C. Penney Casualty Ins. Co.*, 520 So. 2d 532, 533 (Ala. Civ. App. 1988).

[7] Plaintiff's argument that Mr. Vigneaux's Affidavit fails to establish extrinsic evidence of mutual intent is addressed in ADMIRAL's separate Memorandum of Law in Opposition to Plaintiff's Cross-Motion to Strike.

9

homeowners when it comes to its sophistication in insurance matters are belied by the fact that the Plaintiff here is the Board of Directors of a condominium, and as such has greater expertise and sophistication in all business matters and responsibilities relating to the condominium, including procuring policies of insurance for the condominium's benefit. In addition, Plaintiff does not deny that the Insured was represented by a professional broker during policy negotiations. Accordingly, *contra proferentem* may not apply. *See Eastern Air Lines, Inc. v. Ins. Co. of the State of Penn.*, 96 Civ. 7113 (MGC), 2001 U.S. Dist. LEXIS 14734 (S.D.N.Y. Sept. 21, 2001); *Cummins, Inc. v. Atlantic Mut. Ins. Co.*, 56 A.D.3d 288, 867 N.Y.S.2d 81 (1st Dep't 2008). Moreover, as more fully discussed in ADMIRAL's Opposition to Plaintiff's Motion for Partial Summary Judgment, the fact that the Admiral Policy contains certain language drafted by the Insurance Services Office, Inc. ("ISO"), does not automatically render *contra proferentem* applicable under these circumstances.[8] (*See* **Def.'s Opp. Br. at 25 (Docket Nos. 26).**)

### Conclusion

Accordingly, ADMIRAL respectfully requests that the Court grant its Motion for Partial Summary Judgment.

Dated: New York, New York  
September 19, 2014

WHITE FLEISCHNER & FINO, LLP

By: _/s/ Jonathan S. Chernow_  
Jonathan S. Chernow, Esq. (JSC-7339)  
Benjamin A. Fleischner, Esq. (BAF-7006)  
Eric R. Leibowitz, Esq. (EL-5488)  
Attorneys for Defendant  
ADMIRAL INDEMNITY COMPANY  
61 Broadway - 18th Floor  
New York, New York 10006  
(212) 487-9700

---

[8] In its brief, Plaintiff cites outdated authority indicating that ISO is an "association of more than 1400 property and casualty insurers." (Plaintiff's Br. at 21 n.8.) In its opposition to Plaintiff's motion, ADMIRAL has already refuted this and discussed the approval of ISO language by the New York State Department insurance regulators. (*See* **Def.'s Opp. Br. at 9 n.2 (Docket Nos. 26), and Affidavit of Jodi Strum in Opposition to Plaintiff's Motion for Partial Summary Judgment ¶ 10, filed with the Court on September 12, 2014 (Docket No. 25).**)